Good morning, Your Honors. This is Ina Lipkin on behalf of the petitioner. This case is before the court following the Board of Immigration Appeals' affirmance of an immigration judge's adverse credibility finding. The petitioner contends that the board's affirmance was an error as the mistakes that the IJ had pointed to were not consequential and were actually the result of the petitioner minimizing the effect of harm that he suffered rather than exaggerating it, so that the inconsistencies noted did not form a proper basis for the adverse credibility finding. Indeed, the petitioner had established that as a Hindu that belonged to the Dara Saga Saksha or DSS group, he was violently attacked by religious Sikhs who sought to stop his own religious activities and that the police did not protect him and instead defended the actions of the Sikhs and because he was harmed on account of his he established past persecution on a protected ground that did rise to the requisite level. The alleged inconsistencies that the judge had relied on and which the board had affirmed under a matter of verbatim, so we look at the IJ's findings, again were not a sufficient basis for the adverse finding. For example, the IJ noted that the petitioner had first stated that his parents were harmed during the last attack, that was in his original sworn statement, but when he testified and in his supplemental declaration he actually his parents were not harmed and that error in the initial application was attributable to miscommunication. The IJ completely and improperly ignored his plausible explanations that his first declaration was prepared while he was still in DHS custody and he explained that he was not aware of the mistakes that it contained. The IJ improperly failed to give credence or any weight to his plausible explanation. Furthermore, there were other instances of harm that he again minimized including police treatment as we argued in the brief. He explained that initially in his declaration that he was slapped by the counter, but later he explained that actually it was the Sikhs who attacked him that hit him with a stick and slapped him on the face and later he completely recanted and stated, you know, I think I was mistaken and I don't believe the police hit me at all. That is actually minimizing the harm rather than exaggerating it and the immigration judge failed to state a cogent reason why that minimization was not adequate. Can I ask a question? Yes. Some of the inconsistencies you point to it's not, it can seem to be more than simply first test first saying one thing and then something different. Sometimes it was saying something, saying something different that may have increased the harm. There was more than one wave of inconsistency and given the number of inconsistencies that the IJ points to and the fact that some of them go to the extent to which the attacks were, involves serious uses of force, involved attempts to set fire to tents or beat people. Don't those go to the heart of the claim of future persecution? Your Honor, the issue here is that he plausibly explained that a number of the inconsistencies that were contained in the original declaration prepared while he was in DHS custody contained errors that he believed may have been a result of miscommunication between himself and the person helping him prepare that application. When he testified before the judge, he was very consistent in accordance with the revised declaration which minimized the harm. For example, Your Honor pointed to the burning of the 2012 sermon of the DSS that the petitioner had attended. Yes, there is an inconsistency in that the declaration notes the attack occurred while he and other congregants ate a meal following the sermon. And then yes, on cross examination, he indicates that the attack occurred without a meal having occurred. But this kind of inconsistency is truly de minimis. It does not really explain the basis of the harm. It's a minor fact that can be attributed to natural forgetfulness or the vagaries of memory. It's just not the kind of fact that should uphold an adverse credibility finding, especially when his documentary submission corroborates the events that he discusses as an example. Counsel, let me ask you a question. This is a case that's under the Real ID Act of 2005, correct? Yes, that's right, Your Honor. If there's no other questions, I can reserve my time. All right. Thank you, Counsel. And Ms. Murcia? Good morning, Your Honors. May it please the Court, Lisa S. Murcia of the Office of Immigration Litigation for the respondent. As the Petitioner's Counsel discussed, the main issue before the Court today is whether the record compels reversal of the agency's adverse credibility finding. As the respondent argued in their brief, however, Mr. Singh's testimony was internally consistent, as Petitioner's Counsel appears to have conceded. There's no question that these inconsistencies exist on the record. Petitioner's Counsel conceded in their brief, and they appear to be conceding this in their argument. And so the only question that Petitioner's Counsel seems to put forth is whether or not this Court should be considering these inconsistencies in aggregate as de minimis, sort of dismiss the fact that these inconsistencies exist in the record. Counsel, excuse me. Some of them are quite trivial. Are they not? I mean, for example, the inconsistency over whether the Sikhs interrupted the 12-12 meeting during the sermon or after the sermon. What difference does that make? Your Honor, as we discussed in our brief, in Shrestha v. Holder, this Court discussed the difference between minor inconsistencies and trivial inconsistencies. In Shrestha, the Court pointed out to maybe a difference in time as a possible trivial inconsistency. However, the Court still stated that minor inconsistencies, even minor inconsistencies in proper circumstances, would support an adverse credibility determination, especially when viewed in aggregate or viewed in the totality of the circumstances. So Your Honor pointed to one instance where you were calling it trivial. I think the government would call it maybe a minor inconsistency. But in aggregate, looking at all of the inconsistencies in his discussion of, excuse me, let me just adjust the camera for a second, looked at in aggregate all of these quote-unquote minor inconsistencies, perhaps the interruption of the sermon as in terms of timing might be looked at minor. But then when you add to it the inconsistencies as to the property damage to the tent and to his uncle's house, which contrary to what counsel said, is a discrepancy not only within his testimony, but between corroborating evidence that he submitted in support of his claim. That is just the December 2012 incident. And then you add on to it the inconsistencies when he was discussing the March 2013 incident, where he inconsistently testified as to whether the Sikhs hit him and his parents. In his declaration, he states that the Sikhs came up to him. He was being hit by hockey sticks. His parents were being hit. In his testimony, he suddenly says there was no harm to his parents. And then all of a sudden he tries to retract it and say, well, maybe I was mistaken. Maybe they were hit or maybe they weren't. And then also regarding her harm to the police, which petitioner's counsel admits is an inconsistency between in his testimony itself. He's saying that the police didn't harm him at first. Then he concedes that in his declaration that he was originally saying that no one harmed him. Then he said, no, oh, actually, someone slapped me. And then he goes back to saying. And then his only explanation is maybe he didn't recall it clearly. So according to this court. I'm sorry. Yeah, I mean, may I ask a question about this if I'm not interrupting you in the middle of a sentence? No, I'm sorry. Please, please, Your Honor. Because it ties into what you were just arguing. What is your pointed response to the argument that some of the inconsistencies, in fact, lessen the account of the harm suffered? And therefore should be viewed as enhancing rather than reducing his credit. As I was stating, Your Honor. First of all, this court's case law clearly says that minor inconsistencies, even viewed in aggregate, can be can be viewed as can go towards adverse credibility. But also this court has stated in Cower versus Gonzalez that their court, that this court has never articulated a per se rule that whenever consistency is technically weakened in asylum claim, they can never serve as the basis of an adverse credibility finding. In Cower, this this this court stated the petitioner in this case would have us ignore the massive, serious, repeated and blatant inconsistencies in her testimony and instead focus on the singular fact that one of the most damaging of her contradictions. I'm sorry. I would essentially weaken her claim. I'm sorry, I didn't get the quote exactly right, but the essence is there. But the and similarly, in this case, the petitioner's only argument is essentially that we should ignore these blatant inconsistencies and instead just concentrate on the fact that they weaken her claim. And I would dispute that they that his claim, excuse me, that it actually is a weakening of the claim of the claim here. The petitioner was inconsistent in terms of how he presented this evidence. It wasn't always a weakening of the claim. In one instance, he's saying that there was no harm. Then he goes back and says, no, there were harm. And then he says that there wasn't. So it's not simply a weakening of the claim. There was definitely just simply inconsistency here, not necessarily just a weakening of the claim as petitioner's counsel claims. So under this court's case law, therefore. The court can consider even inconsistencies where he allegedly is attempting to quote unquote weaken his claim simply because they still remain to be inconsistencies in the aggregate. Your honors. So on that basis, essentially, we would say that important. And also, I would like to point out, as your honor, as your honor, Judge Rosenthal pointed out as well, that significantly regarding these inconsistencies, that these essentially go to the heart of his claims. These inconsistencies aren't simply like, when did he get up in the morning? These inconsistencies go to the basis of his claims. The December 2012 incident in which he alleged that the Sikhs attacked a gathering at his home. And a March 2013 incident where he alleged that the Sikhs attacked another gathering at his home. And significantly as well. Again, it's not only inconsistencies in his testimony, his declaration, but also with submitted evidence. On that basis, therefore, we would ask the court to find that the record does not compel a reversal of the agency's finding regarding the adverse credibility finding. I see my time is almost up. But if the court has any other questions, I will sum up and essentially say that the court should deny the petition for review. What's your position on the convention against torture claim? Oh, certainly. As Mr. Singh was found not credible, his claim under the convention against torture also claims. He did not sustain his burden of proof independent of the non-credible, inconsistent testimony. Based on the record alone, he doesn't point to any basis in his brief on which to sustain his claim. He certainly did not have any credible evidence of any past torture. He doesn't point to any evidence of any likelihood of any future torture at the acquiescence of the government. Don't the country conditions show that there is inter-religious violence? There certainly shows inter-religious violence. But as this court has pointed out, there has to be a particular threat against the petitioner. And simply here, the evidence of inter-religious violence is equivocal. There's certainly religious violence in India. But whether or not he's simply because he is allegedly a member of the Dehra Sathya Sauda that he would be subject to torture is speculative, just based on the record alone. As we pointed out in our brief, he submitted various articles about incidents between the Dehra Sathya Sauda and the Sikhs. I think there was one regarding the showing of a film where there were some clashes. There was also one that, as the immigration judge noted, seemed very similar to his claim where the Sikhs interrupted a gathering of the Dehra Sathya Sauda. However, in both of those instances, there appeared to be the police were there, that they were navigating the religious differences there. Beyond that, he hasn't shown any particular evidence that he would be subject to torture. Thank you, counsel. You're well over your time now. Thank you very much. Ms. Lipkin, you have some time to rebuttal. Thank you, Your Honor. I want to address a contention made by the government regarding this court case law concerning when an applicant lessens the degree of harm rather than exaggerates it, as I'd argued previously. We noted in our brief a number of cases that actually do support that. Stoyanov v. INS, Garabilas v. INS, where this court has found that, quote, has been lessened rather than increased, and the discrepancy generally doesn't support that adverse credibility finding, which ties into the earlier argument that I had made that many of these alleged discrepancies had their origins in the original declaration, which the petitioner had credibly explained contained errors attributable to the miscommunication between the preparer and himself while he was in custody. And the court should give that a more charitable view than the immigration judge had, especially when the petitioner had provided an amended declaration and testified consistently in regards to that document. I want to address the Convention Against Torture claim, where this court has noted on an abundant number of occasions that when the harm stems from the actions of private actors, and here that would be religious sneaks attacking DSS members such as the petitioner. In such an instance, where the authorities, as did here the police, refused to assist an applicant such as the petitioner and instead threatened them or withdrew any kind of protection, then that constitutes an acquiescence to that type of persecution, which would then qualify him for relief under the Convention Against Torture, even if this court upheld the adverse credibility finding. And unless there are any other questions, I will rest on that. Thank you very much. All right. Thank you, Counsel. Singh v. Wilkinson will be submitted. We'll take up Langley v. Collegio.
judges: Wardlaw, Bea, Rosenthal